## Case No. 14,663.

### UNITED STATES v. BROWN.

[Gilp. 155.] [1]

District Court, E. D. Pennsylvania. March 19, 1830.

BONDS—CONDITIONS—STATUTORY FORM—INTERNAL REVENUE COLLECTOR—RETROSPECTIVE CONDITION.

1. If a bond be taken at common law, with a condition in part good and in part bad, a recovery may be had on it, for a breach of the good part.
[Cited in Erlinger v. People, 36 Ill. 461.]

2. If a bond be taken under a statute, with a condition in part prescribed by the statute, and in part not prescribed by it, yet if it be easily divisible, a recovery may be had on it, for a breach of the part prescribed by the statute.
[Cited in brief in Shunk v. Miller, 5 Pa. St. 251.]

3. If a bond be taken under a statute, declaring that it shall be in a prescribed form and in no other, a recovery cannot be had, if it varies from the statute, or if the condition contains more than the statute requires.
[Cited in brief in Small v. Com., 8 Pa. St. 104; Sooy v. State, 38 N. J. Law, 331.]

4. A retrospective condition in a statutory bond is void.

5. The twenty-third section of the act of 9th January, 1815 [3 Stat. 172], which requires a collector of internal revenue to give bond, with condition for the true and faithful discharge of the duties of his office, does not authorise a bond, with condition that the collector has truly and faithfully discharged such duties.
[Cited in Stovall v. Com., 84 Va. 249, 4 S. E. 381.]

6. In a suit against a surety of a collector of internal revenue, upon a joint and several bond, with condition that the collector has truly and faithfully discharged his duties, and also with condition that he will truly and faithfully discharge them, a recovery may be had against the

---

1 [Reported by Henry D. Gilpin, Esq.]

surety for a breach, by the collector, of the latter condition.

[Cited in brief in Musselman v. Com., 7 Pa. St. 241.]

On the 22d July, 1813 [3 Stat. 22], an act of congress was passed for the assessment and collection of direct taxes and internal duties, by which various collection districts were established in each state. The Eighth district of Pennsylvania comprised the counties of Northampton and Wayne. One collector was to be appointed by the president for each district, who was to be a respectable freeholder and reside within the same. He was required before receiving from the assessors the lists of taxes and taxables, to "give bond with one or more sufficient sureties, to be approved by the comptroller of the treasury, in at least double the amount of the taxes assessed in the collection district, for which he was appointed; which bond was to be payable to the United States, with condition for the true and faithful discharge of the duties of his office, according to law, and particularly for the due collection and payment of all moneys assessed upon such district; and the said bond was to be transmitted to and deposited in the office of the comptroller of the treasury." He was required to pay over to the treasury, quarterly, or sooner if required by the secretary, the moneys collected, and to render a final account within six months after receiving the lists from the assessor; and, in case of failure to do so, the comptroller was authorised to issue a warrant of distress against him and his sureties, their persons, chattels, and real estate. 2 Story's Laws, 1320, 1324, 1330 [3 Stat. 22, 30]. On the 2d August, 1813, an act of congress was passed, laying a direct tax, by which the sum of thirteen thousand seven hundred and eighty dollars was fixed as the quota of the counties of Northampton and Wayne, in Pennsylvania. 2 Story's Laws, 1358 [3 Stat. 53].

On the 5th January, 1814, the president of the United States, appointed Nicholas Kern of Northampton county, collector of direct taxes, for the Eighth collection district of Pennsylvania. On the 13th January, 1814, Nicholas Kern, with Jacob Weygandt and Christian Bixler as his sureties, gave bond to the United States of America, in the penal sum of twenty-seven thousand five hundred and sixty dollars, with the following condition: "Now, therefore, if the aforesaid Nicholas Kern, has truly and faithfully discharged, and shall continue truly and faithfully to discharge the duties of said office, according to law; and shall particularly, faithfully collect and pay according to law, all moneys assessed upon such district, then the above obligation shall be void, and of none effect, otherwise it shall abide and remain in full force and virtue." On the 18th May, 1814, this bond was transmitted to the comptroller of the treasury, and the sureties were approved by him. On the

9th January, 1815 [3 Stat. 164], an act of congress was passed to repeal the act of the 22d July, 1813, "except so far as the same respected the collection districts thereby established, internal duties, and the appointment and qualifications of the collectors and principal assessors, thereby authorised and required." It also provides that "each collector before receiving any list as aforesaid for collection, shall give bond with one or more sufficient sureties, to be approved by the comptroller, in the amount of the taxes assessed in the collection district, for which he has been or may be appointed, which bond shall be payable to the United States, with condition for the true and faithful discharge of the duties of his office, according to law, and particularly for the due collection and payment of all moneys assessed upon each district; and the said bond shall be transmitted to and deposited in the office of the comptroller of the treasury. Provided, nothing herein contained shall be deemed to annul, or in any wise to impair, the obligation of the bond heretofore given by any collector; but the same shall be and remain in full force and virtue, any thing in this act, to the contrary thereof, in any wise notwithstanding." It contained also similar provisions to the preceding act, for paying over moneys collected and rendering accounts, and for proceedings in case of failure. 2 Story's Laws, 1452, 1461, 1465 [3 Stat. 172, 175]. By the same act the quota of Pennsylvania was increased to double the amount fixed by the preceding one. 2 Story's Laws, 1451 [3 Stat. 164].

On the 19th April, 1816 [3 Stat. 291], an act of congress was passed for laying duties on licenses to distillers, requiring them to deliver a bond to the collector of the district, for payment of duties every twelve months; and it was made the duty of the collector to collect the duties and prosecute for their recovery. 3 Story's Laws, 1569, 1572 [3 Stat. 292, 294].

On the 17th October, 1816, Nicholas Kern, with Robert Brown and Jacob Driesbach, as his sureties, gave a second bond to the United States of America, in the penal sum of forty-five thousand dollars, with the following condition: "Now therefore, if the aforesaid Nicholas Kern has truly and faithfully discharged, and shall continue truly and faithfully to discharge, the duties of said office, according to law, and shall, particularly, faithfully collect and pay according to law, all moneys assessed upon such district, then the above obligation shall be void and of no effect, otherwise it shall remain in full force and virtue." On the 11th January, 1817, this bond was transmitted to the comptroller of the treasury, and the sureties were approved by him. Nicholas Kern continued to act as collector until the close of the year 1825. On the 14th December, in that year, a settlement of his accounts took place at the treasury, and a balance appear-

ed against him of eighteen thousand nine hundred and thirty-nine dollars and eighty-six cents. A transcript of the accounts and the two bonds were transmitted to the Eastern district of Pennsylvania, and suits were commenced against the principal and sureties in both bonds, in the year 1826.

The present defendant [William Brown] is the administrator of Robert Brown, one of the sureties in the bond of the 17th October, 1816. The declaration, which was in debt on this bond, contains two counts. The first proceeds for the penalty without setting out the condition or any breach of it. The second sets out the condition of the bond and assigns two breaches of it; the first assignment of a breach is a general one declaring, that after the execution of the bond, Nicholas Kern did not truly and faithfully discharge his official duties, nor faithfully collect and pay according to law, all moneys assessed upon his district; the second assignment of a breach is more special and comprises two allegations, the one that he did not pay fifty-one dollars and ninety-nine cents, cash received by him as collector after the execution of the bond, the other that he did not collect and pay eighteen thousand eight hundred and eighty-seven dollars and eighty-seven cents, due on uncollected bonds taken by him as collector, to wit, on the 1st January, 1817. To this declaration seven pleas and a special demurrer are filed, on six of which there is a joinder of issue as to matters of fact. The remaining plea is the fourth. The fourth is a plea in bar, containing averments of the original appointment of Nicholas Kern, and his commission, on the 5th January, 1814; that he exercised the office thenceforward till the date of this bond of the 17th October, 1816; that this bond was prescribed by the act of 9th January, 1815, and was required and taken under colour of it; that its condition varies from the one prescribed by that act in providing that Nicholas Kern, "had truly discharged the duties of his office," previously to the execution of the bond; and that therefore, the "writing brought into court," and on which the suit is brought is void. The special demurrer is to so much of the second count of the declaration as alleges a breach of condition on the part of defendant Nicholas Kern, in not collecting and paying the eighteen thousand eight hundred and eighty-seven dollars and eighty-seven cents, due on uncollected bonds taken by him, on the ground that the nature and circumstances of the uncollected bonds, and the time they were taken, or became due, are not set forth. To the fourth plea the United States demurred and the defendant joined in demurrer. The United States also joined in the special demurrer of the defendant.

The demurrers were argued on the 19th March, 1830, by—

Dallas, U. S. Dist. Atty.
Binney & Chauncey, for defendant.

Mr. Dallas, for the United States.

In order correctly to understand this case, there must be a full reference to the acts of congress, under which Nicholas Kern was appointed a collector of the direct taxes and internal duties for the Eighth district of Pennsylvania, as well as to the pleadings in this action. Upon the fourth plea the broad question comes up. It is asserted, on the part of the defendants, that the bond on which the suit is brought does not conform to the act of congress, under which it purports to have been made, but is contrary thereto; that it is therefore void in law, having a retrospective clause in the condition, not warranted by the act of congress, to wit, that the said Nicholas Kern "has" truly and faithfully discharged his duties. In answer to this objection, it is contended that the bond is good, so far as it constitutes the foundation of the demand in this suit. The declaration does not, in assigning a breach of the bond, refer to any part of the condition not prescribed by the act of congress. In setting forth the breach there is no retrospect, nor any demand made for any thing done by the collector antecedent to the bond. Utile per inutile non vitiatur. The excess in the condition is neither malum in se, nor malum prohibitum. Although the bond be taken under the statute, it is also, in its nature, a voluntary bond. It is not like a bond exacted by compulsion of law, in the course of a judicial proceeding, nor like an embargo bond, which the party gives to enjoy a particular advantage. We sue for nothing but what is contained in the act of congress, and has the assent of both parties. The law may discriminate between the good and bad parts of a bond, unless the statute is express that it shall be void. 3 Story's Laws, 1568 [3 Stat. 291]; Shep. Touch. 371; 1 Fonbl. Eq. 212; Bull. N. P. 171; Pigot's Case, 11 Coke. 27; Norton v. Simmes, Hob. 13; Butler v. Wigge, 1 Saund. 65; Lord Arlington v. Merricke, 2 Saund. 410; Shum v. Farrington, 1 Bos. & P. 640; Barton v. Webb, 8 Durn. & E. [8 Term R.] 459; Newman v. Newman. 4 Maule & S. 70; U. S. v. Smith [Case No. 16,334]; Armstrong v. U. S. [Id. 549]; U. S. v. Howell [Id. 15,405]; U. S. v. Sawyer [Id. 16,227]; Bolton v. Robinson, 13 Serg. & R. 195; Postmaster General v. Cochran, 2 Johns. 415; Vail v. Lewis, 4 Johns. 450; Hughes v. Smith, 5 Johns. 168; Morse v. Hodsdon, 5 Mass. 314; Clap v. Gould, 8 Mass. 153; Purple v. Purple. 5 Pick. 226; Washington v. Smith, 3 Call. 13; Johnstons v. Meriwether. 3 Call. 523.

Binney & Chauncey, for defendant.

Has this bond a legal validity? The first count of the declaration is general, and the plea is performance generally. The second count sets out the alleged breaches; to this there are pleas, and demurrer. This goes back to all the proceedings anterior to the

demurrer, and we are to inquire where is the first fault. If the plea be insufficient, and the matter in it not such as will warrant a judgment for the defendant, yet if the declaration be bad, setting out no good cause of action, judgment must be for the defendant. If, therefore, either the plea or the declaration is for the defendant, he will be entitled to judgment.

I. As to the plea. It is admitted that the sureties are not answerable for any thing before the bond. The declaration should inform the defendant what it is he is to answer; yet the second count in fact shows no breach at all. It contains only a general allegation, that the defendant has not performed; but does not distinctly set out a particular breach. The first part, or general averment, is but introductory to the breaches afterwards set out. The breaches, as assigned, are two; yet there is no averment that the fifty-one dollars and ninety-nine cents were collected from the district of the collector, or ought to be paid to the United States; and as to the "uncollected bonds," what bonds are referred to? All this should have been set out, to show whether or not they came under the first bond, given by Kern in 1814, pursuant to the act of 22d July, 1813,—2 Story's Laws, 1445 [3 Stat. 156].—because the bond of 1814 is to answer for such uncollected bonds. It is not averred that it was his duty, as collector, to collect these bonds; they may or may not have related to his office. The questions therefore are, is the breach set out with certainty? If certain, is the breach one within the bond? 1 Chit. Pl. 326. 328.

II. As to the validity of the bond. This is not a voluntary bond. The pleadings agree that a bond was required by the statute. The act of congress does not authorise this bond. The act is clearly prospective. This is not the case of a bond to acts which will violate some law, yet which has other conditions that are lawful; nor is it to do an act which any statute prohibits. The question is, whether, where a bond is authorised by a statute, and it is taken, not according to the statute, it is not void. The officer taking the bond has done that which is not according to his authority, but is substantially different from it. Is it good for any thing? If a statutory authority may be exceeded, and is nevertheless good for all but the excess, how can we avoid oppression? The authority must be strictly, or at least in substance pursued. Affirmative words in a statute contain or imply a negative; that it shall be done in no other manner. If the bond is void, it cannot be helped by alleging only such a violation as is within the lawful part of the condition. The question is not upon the condition, but the bond. The bond is one and indivisible: the penalty cannot be divided. Jenk. Cent. 135, pl. 76; Bull. N. P. 172; 1 Chit. Pl. 326; Dive v. Maningham, Plow. 63; Townsend's Case, Id. 113; Strad-

ling v. Morgan, Id. 206; Lee v. Coleshill, Cro. Eliz. 529; Norton v. Syms, Moore, 856; Slade v. Drake, Hob. 298; Wethen v. Baldwin, Sid. 55; Rex v. Croke, Cowp. 29; Thatcher v. Powell, 6 Wheat. [19 U. S.] 119; U. S. v. Hipkin [Case No. 15,371]; U. S. v. Morgan [Id. 15,809]; U. S. v. One Case of Pencils [Id. 15,924]; Warner v. Racey, 20 Johns. 74.

Mr. Dallas, for the postmaster general, in reply.

The effort is not to reject that part of the contract which is admitted to be bad, but that which is admitted to be good. The act of congress requires a collector to give the bond, but does not designate the officer who is to take it. The comptroller is to approve the bond offered. Therefore the act does not give an authority to a public officer to require the bond. There are in reality but two questions. (1) Is the bond, for all the purposes of this action, valid? (2) Has it been sufficiently declared upon? A reference to the pleadings will show the last point is well established. As to the first; the good part of a condition may be permitted to stand and the bad be rejected, in the case of statute as well as common law bonds, with three exceptions: (1) where it is malum in se; (2) where it is malum prohibitum; (3) where the instrument is verbally set forth and prescribed by the statute. A voluntary bond is not a statutory bond; but Judge Story, in the case of U. S. v. Sawyer [Case No. 16,227], seems to think that an embargo bond may be called voluntary. The principle of the defendant is, that because the officer has done more than the law allowed, all is void. This is novel to the extent it is now carried. That which is out of the authority is void, but all within it is good. By the twenty-third section of the act of 9th January, 1815,—2 Story's Laws, 1461 [3 Stat. 172],—the collector is to prepare and offer his bond to the comptroller for approbation. No officer of the United States is authorised to demand the bond: if there is anything wrong in it, it is the collector's own making, no public officer had anything to do in framing it: all, therefore, beyond the law, is the voluntary act of the collector.

HOPKINSON, District Judge. In the month of January, 1814, Nicholas Kern, of Northampton county, in the state of Pennsylvania, was appointed, by the president of the United States, collector of direct taxes and internal duties for the Eighth collection district of Pennsylvania; and on the 13th of the same month he gave bond to the United States in the sum of twenty-seven thousand five hundred and sixty dollars, with the condition that "the aforesaid Nicholas Kern has truly and faithfully discharged, and shall continue truly and faithfully to discharge the duties of said office, according to law, and shall, particularly, faithfully collect and

pay, according to law, all moneys assessed upon such district." The sureties, bound with Kern in this bond, were Jacob Weygandt and Christian Bixler. This bond was taken under the act of congress of 22d July, 1813. The form of the bond to be given by a collector, is prescribed by the eighteenth section, and the condition is to be "for the true and faithful discharge of the duties of his office, according to law." The bond given, as above stated, is retrospective, and the condition is, that Kern "has discharged and shall continue to discharge" his duties. His appointment is said to have been made on the 5th January; but, as he was bound to give the security before he received any list for collection, and, of course, before he could perform any of the duties of his office, I cannot perceive for what object or reason the retrospective words were introduced; if, even by law, they could have been added to the condition prescribed by the act of congress. It may be remarked that the bond is printed with the condition I have recited, and was probably prepared in the treasury department, and distributed to all the collectors appointed under the act.

On the 17th October, 1816, Nicholas Kern gave another bond, in the same form and with the same condition as the first, but with a change of the sureties. Robert Brown and Jacob Driesbach are joined with him in the second bond. An inspection of these bonds, and comparison as to paper and type, will show that the same blank form was used for both, there being no difference between them but in the dates, the amount of the penalty, and the names of the sureties. It is on the second bond that the present suit is brought against the administrator of Robert Brown, one of the sureties. This bond was taken under the directions of an act of congress, passed on the 9th January, 1815. The second section of this act repeals the former, "except so far as the same respects the collection districts, therein and thereby established and defined, so far as the same respects internal duties, and so far as the same respects the appointment and qualifications of the collectors, and principal assessors, therein and thereby authorised and required; in all which respects, so excepted, as aforesaid, the said act shall be and continue in force, for the purposes of this act." By the twenty-third section of this act, it is provided, "that each collector, before receiving any list, as aforesaid, for collection, shall give bond, with one or more good and sufficient sureties, to be approved by the comptroller of the treasury, in the amount of the taxes assessed in the collection district for which he has been or may be appointed, which bond shall be payable to the United States, with condition for the true and faithful discharge of the duties of his office according to law, and particularly for the due collection and payment of all moneys assessed upon such district." There is, also, a provision, that nothing contained in this act "shall be deemed to annul or impair, the obligation of the bond heretofore given by any collector."

On a settlement of Nicholas Kern's accounts, a balance appears to be due from him to the United States of eighteen thousand nine hundred and thirty-nine dollars, and eighty-six cents, for the recovery of which suit is now brought. The declaration, in the first count, claims the penalty of the bond, to wit, forty-five thousand dollars, as forfeited to the United States, and sets out, that Robert Brown, on the 17th of October, in the year 1816, by his certain writing obligatory, granted himself to be held and firmly bound in the said sum "to be paid to the United States, whenever he, the said defendant, shall be thereunto afterwards required." A second count in the declaration recites the bond, and adds "which said writing obligatory was and is subject to a certain condition;" and the condition is recited; the declaration then proceeds "and the said United States in fact say, that the said Nicholas Kern, collector as aforesaid, did not, while such collector, and after the execution of the said writing obligatory, truly and faithfully discharge the duties of the said office according to law, nor particularly, faithfully collect and pay according to law, all moneys assessed upon such district, but made default therein, and neglected and refused so to do, contrary to the duties of his said office, and the acts of congress; particularly in not paying to the proper officers of the treasury of the United States, the sum of fifty-one dollars and ninety-nine cents, cash by him received as such collector, and after the execution of the said writing obligatory, and so due from him from and on the 31st December, 1821; and further, in not collecting and paying, according to law, the further sum of eighteen thousand eight hundred and eighty-seven dollars and eighty-seven cents, due by uncollected bonds taken by the said Nicholas Kern, as such collector." The death of Robert Brown, the obligor, is then averred, and the granting of letters of administration to William Brown, the present defendant. The bond is a joint and several obligation.

The defendant craves oyer of the bond, and of the condition; and they are read to him, and set out "in hæc verba." (1) In plea, to the first count in the declaration, he then says, "that the said writing obligatory is not the deed of the said Robert Brown," and of this he puts himself on the country. (2) And for further plea to the first count he says, "that he has fully administered," and prays judgment. (3) For further plea to the first count he says "that the said Nicholas Kern did continue truly and faithfully to discharge the duties of his said office;" which he is ready to verify, and therefore he prays judgment. (4) And for further plea to the first and second counts

of the declaration, he recites in his plea the appointment of Nicholas Kern, and his commission dated on the 5th January, 1814, as collector, under the act of congress passed on the 22d July, 1813; that the said Kern entered upon the exercise of his office, and continued therein "up to the day of the sealing and delivery of the said supposed writing obligatory." The plea then refers to the act of congress above mentioned, passed on the 9th January, 1815, and particularly recites the form of the bond, with the condition directed to be taken by that act. It further avers that "the said supposed writing obligatory, on the day of the date thereof, and after the said Kern had been a long time in the exercise of his said office, was required by the said United States to be sealed and delivered by the said Kern, and by the said Robert Brown, as surety of the said Kern, and was by the said United States taken from the said Kern, and from the said Robert Brown, as surety of the said Kern, on the day and at the place in the said declaration mentioned, under colour of the said act of congress of the United States, and contrary thereto." The plea then avers that the condition of the supposed writing obligatory "does not, and did not, conform to the said act of congress," and that the bond and condition were and are contrary thereto, and in violation of the same, "inasmuch as by the said condition of the said supposed writing obligatory, it is provided, that the said Nicholas Kern had, before the sealing and delivery of the said supposed writing obligatory, truly and faithfully discharged the duties of his said office, according to law, and the said supposed obligation was thereby declared to abide and remain in full force and virtue, in case the said Nicholas Kern had not, before the sealing and delivery thereof, truly and faithfully discharged the duties of his said office, according to law. And so the said defendant saith, that the said writing so brought into court is void in law." (5) As a further plea to the second count of the declaration, the defendant says, "that the writing obligatory therein mentioned, is not the deed of the said Robert Brown." (6) There is also a plea of "fully administered," to the second count. (7) As to the first breach assigned, in not paying to the treasury of the United States the sum of fifty-one dollars, and ninety-nine cents, the defendant says, that they "were not received by the said Nicholas Kern, as. such collector, after the execution of the said writing obligatory." (8) As to the second breach assigned, he says, that the matters contained in it "are not sufficient in law for the United States to have or maintain their action," and that he is not bound to answer them.

The defendant then states and shows the following causes of demurrer to the said second assignment of breach. (1) That the said assignment of breach does not state and set forth the nature and circumstances of the said uncollected bonds, nor by whom, to whom, at what time, nor for what amount or consideration given, nor when or to whom payable. (2) That the said assignment of breach does not state and set forth that the said uncollected bonds were taken by the said Nicholas Kern, after the said execution and delivery of the said writing obligatory. (3) That the said assignment of breach does not state and set forth that the said sum of eighteen thousand eight hundred and eighty-seven dollars and eighty-seven cents, became and was due by the said Nicholas Kern after the execution and delivery of the said writing obligatory. (4) That the said assignment of breach does not set forth and state that the default of the said Nicholas Kern, in not collecting and paying the said sum of money, took place after the execution and delivery of the said writing obligatory, and not previously thereto.

To these pleas the United States have replied severally. As to the first, fifth and seventh, that is, those of the general issue, they also put themselves upon the country. On the second and sixth, which are pleas of "fully administered," they deny the allegation and take issue. As to the third plea they reply: (1) That after the execution of the said writing obligatory the said Nicholas Kern did not continue truly and faithfully to discharge the duties of his said office, according to law, and did not, particularly, faithfully collect and pay, according to law, all moneys assessed upon the said district, because they say that the said Nicholas Kern continued in his said office as collector from the day of the execution of the said writing obligatory until and after the first day of July, 1825; and that during the said time, that he, the said Nicholas Kern, so continued in his said office as such collector aforesaid, to wit, the said last mentioned day and year, and on divers other days and times after the day of the execution of the said writing obligatory, he, the said Nicholas Kern, in his said office and as such collector aforesaid, had and received for and on account of the said plaintiffs, divers sums of money, amounting in the whole to the sum of eighteen thousand five hundred and fifty-three dollars and thirty-three cents. (2) That after the execution of the said writing obligatory, and whilst the said Nicholas Kern continued in his said office and as collector aforesaid, he did not faithfully collect and pay, according to law, certain large sums of money assessed upon the said Eighth collection district of Pennsylvania, amounting in the whole to the sum of seventeen thousand two hundred and forty-eight dollars and fifty-six cents, but faithfully to collect and pay the same he has hitherto wholly failed and made default. As to the fourth plea they reply, that the same and the matters therein contained are not sufficient in

law to bar and preclude them from having or maintaining their aforesaid action thereof, against the said defendant. As to the second breach in the second count of the declaration assigned, they say that the matters therein contained, in manner and form, are sufficient in law for them, to have and maintain their aforesaid action against the said defendant.

On these pleadings two general questions have been raised and argued at the bar: One having relation to the declaration, or the manner and form in which the plaintiffs have set out their demand; and the other denying the whole ground of the action, and alleging that the bond or writing obligatory, on which it is founded, is wholly void in law, and that no recovery can be had upon it, in this or any other form of action.

The second question is the most important and will be first considered. It is not the first time it has come before the courts of the United States, but, so far as we may judge from the reports of the cases, it has not, until now, been examined with any considerable diligence or care. The question, briefly stated, is whether, if the condition of a statutory bond contains more than is required by the statute, the bond is wholly void. Before we enter upon the examination of this question, I will state the difference which exists in this case, between the bond actually taken and that authorised to be required by the act of congress. The condition of the bond of a collector, prescribed by the statute, is directed to be "for the true and faithful discharge of the duties of his office, according to law, and particularly, for the due collection and payment of all moneys assessed upon such district." The condition of the bond in question is, "that the said Nicholas Kern has truly discharged, and shall continue truly and faithfully to discharge the duties of his said office." The substantial difference is, that the bond taken, and on which this suit is brought, has a retrospective operation; but the bond directed by the statute has no such operation, but is altogether prospective. The question to be decided is not whether we can give to the bond this retrospective effect; that is not pretended on the part of the plaintiffs: but whether, by this departure from the statute, the obligation is entirely void and null, so that no recovery can be had upon it even for defaults or breaches of the condition, which, in truth, were made after the execution and delivery of the writing obligatory.

The argument against the legal validity of this bond is substantially this: that the officers of the United States, by whom this bond was required and taken from Nicholas Kern, and without which he could not receive his appointment as collector, or enter upon the duties of his office, were the agents of the United States, acting by and under a special authority delegated to them in precise terms by the United States: that these agents were confined strictly, or at least in matters of substance, to the terms and limits of their authority: and that if they exceeded their authority, and demanded from a collector a bond differing from that required and authorised by the law, imposing obligations upon him not imposed or warranted by the law, the whole execution of the authority was void. It is further argued, that one of the reasons of this strictness is, to preserve those who are called upon to give such bonds, from injustice and oppression by the officers who are appointed to take them: and this important object cannot be effected if the bond, having in it an illegal or unauthorised condition, shall, nevertheless, stand good for so much as is according to law: that the only remedy and protection against such oppression, under colour of office, is to declare the whole to be an illegal and void execution of the authority. The moral theory of this argument is good, but we must look further, for the policy and utility of its practical application to the business of the world and the purposes of justice. It is the duty of a court of law to pursue this inquiry into the proceedings of the courts, and to abide by their decisions upon it. It is so purely a question of law, that I shall look to the cases in which it has been agitated or decided, for my judgment upon it. The books seem to have been thoroughly examined, and we have probably all the judicial light that can be brought upon the subject. Is a statutory bond, the condition of which contains more than is required or authorised by the statute altogether void; or may it be a good and valid obligation for so much as is according to the statute, and void only as to that part which is not according to the statute? I shall take up the cases as they were read at the bar.

Much reliance has been placed on the case of Purple v. Purple, 5 Pick. 226. It was briefly this: A replevin bond was given to the officer who executed the writ; the statute required that it should be given to the defendant; the bond was adjudged to be void. It is obvious, that this case does not meet the question we are discussing. It was not the case of a bond good in part, and bad in part; of a bond with a divisible condition. No attempt indeed was or could be made, to support it on that ground. It was at once given up as a statutory bond; as such an obligation or instrument as could be supported by and under the statute in whole or in part; and the effort made was to maintain it as a good bond at common law. The court, in deciding against it, say, "the bond could, in no sense, be taken to be according to the statute." And again, they say, "it stands as a bond given to one who had no lawful authority to take it; and the purpose and effect of it were to aid and abet him in a trespass upon the attaching officer; it is therefore illegal and void."

The case of Johnstons v. Meriwether, 3 Call, 523, is also a case of a statutory bond given to a wrong person; to one not authorised by law to take it, and not divisible. It must necessarily be wholly good or wholly bad. On the service of an execution, an obligation called a "forthcoming bond," was given to the coroner instead of the plaintiff in the action. The court give no reason but it is said briefly, that if such a bond be not good as a statutory bond, it may be good at common law.

In the case of Newman v. Newman, 4 Maule & S. 70, part of the condition of the bond, was for the payment of money and part for the presentation of the obligee's son to the next avoidance of a church. It was there held that, if the latter part of the condition was simoniacal, yet the bond was good for the payment of the money. Lord Ellenborough says: "Admitting the condition of this bond to be ill as to one part of it, it seems that it may be well as to the other parts, for you may separate at the common law the bad from the good." From this case we learn, that there is no principle of the common law, which forbids us to separate the good from the bad part of the condition of a bond, where they are of a nature to be severable: and the difference between a bond at common law, and one executed under the directions of a statute, seems to be only, that in the latter case the bond is required and given under an authority derived from the statute, and it is therefore asserted that the authority must be strictly pursued; and that if it be exceeded, the whole execution is null and void. This principle will be attended to.

The case of Warner v. Racey, 20 Johns. 74, was also one of a bond given to a wrong party. It was made payable to "the people of Niagara county," instead of "to the people of the state of New York." The court very shortly say; "the bond is not according to the statute: and if it were, there is no evidence of any breach."

The case of the U. S. v. Sawyer [Case No. 16,227], decides some questions in pleading which belong to another part of our case. As to the part we are now inquiring into, there is no direct opinion given, for the learned judge thought the bond was taken substantially, according to the act of congress. The objections, however, made to that bond were essentially the same with those urged here, on the part of the defendant. That to every contract there must be two parties. That the United States can contract only according to the regulations and authorities of statutes. That the assent of the United States can be declared only through their authorised agents; and these agents cannot effectually assent, unless they are clothed with the authority by law. An assent, therefore, in a manner different from that prescribed by the law, is not valid, and consequently does not bind at all. The judge, as I have said, was of opinion, that, on a fair construction, the bond was conformable to the law. He, however, puts as a question, on which he gives no decision, whether a bond taken by a collector, under a general authority to take bonds in revenue cases, would be void on account of any irregularity or mistake in the condition? Whether such a bond, where the condition is partly conformable to, and partly variant from, the provisions of the statute, be void in whole, or good as to that part of the condition which is conformable to law? The judge significantly adds, "that the principles, on which such bonds are adjudged to be wholly void, will encounter much opposition from the authority of decided cases." This was in the year 1812.

Pigot's Case, 11 Coke, 27, was one of debt on a bond, and plea, non est factum. The bond was given originally to the plaintiff, Benedict Winchcombe, in sixty pounds. After the execution and delivery of the bond, the words "sheriff of the county of Oxford" were inserted after the name of Benedict Winchcombe, and before the words "in sixty pounds;" the obligee being, in fact, sheriff of Oxford, and the bond an official bond. The interlineation was made without the privity of the obligee. The case turns upon the effect of this interlineation in the bond. It is said, it was moved at the bar, when a deed shall be good in part and void in part; and as to this, Lord Coke says: "I conceive there is a difference when a deed is void ab initio, and when it becomes void by misfeasance, ex post facto: also, when the deed which is void ab initio, doth consist upon the entirety, and when, upon divers several causes; and in these, also, there is a difference, when the several clauses are absolute and distinct, and when they are several, and yet the one has dependency upon the other." The report goes on to state, "that it was unanimously agreed in 14 Hen. VIII. 25, 26, that if some of the covenants of an indenture or of the conditions indorsed upon a bond, are against law, and some good and lawful, that in this case the covenants or conditions which are against law are void ab initio, and the others stand good." In this reference to the unanimous judgment in 14 Hen. VIII., no distinction is noted between a common law and a statutory bond; but we must observe, that the case in which it is cited by Lord Coke, was one of an official statutory bond. It is further said in this case "that if there are two absolute and distinct clauses in a deed, and the one is read to the party not lettered, and the other not, that the deed is good for the clause which was read, and, ab initio, void for the residue." Bull. N. P. 171, cites the case we have just referred to, and thus expresses himself: "If part of the condition be bad by common law and part good, the deed will be good for that part of the condition which is good: aliter, where part is made bad by statute." No

such distinction is found in Pigot's Case. Besides the words "part is made bad, by statute" import something much stronger than the mere addition of a condition, not authorised by the statute, to one that is.

The case of Norton v. Simmes, Hob. 13, was a decision upon the words of the statute of 23 Hen. VI. It is said "the difference was taken between a bond made void by statute, and by common law; for if, upon the statute of 23 Hen. VI., a sheriff take a bond for a point against that law, and also for a debt due, the whole bond is void; for the letter of the statute is so." This statute prescribes the form of the bond or security which a sheriff shall take; and we thus understand what is intended in Hobart, by the expressions of a bond "made void by the statute" and "taken for a point against that law."

In the case of the U. S. v. Smith [Case No. 16,334], this statute and the decisions upon it are noticed. It was an action on a bond executed by the defendant to the United States, and delivered to the collector of the port of New York, taken under the second section of the embargo act, of 22 December, 1807,—2 Story's Laws, 1071 [2 Stat. 453]. It was contended to be a void bond, because not made in conformity with the act, which required the security "to be given to the collector of the district," and this was made payable to the United States. The condition, also, was to reland the goods at the said port of St. Mary's, or at some other port of the United States. The words of the act were that they should be relanded "in some port of the United States." Judge Talmadge said, that the law prescribed no form of bond, nor avoided any that might be adopted. He thought, "the bond, as taken, embraced the substance and was within the spirit and authority of the act, a voluntary bond and valid." He observes, that the English authorities cited were decisions upon the particular words of the statute of 23 Hen. VI., authorising and requiring bail bonds, "which statute prescribes the form of the security and declares all others to be void." The doctrines of this decision receive a strong confirmation in the case of Morse v. Hodsdon, 5 Mass. 314, where it is laid down, that if the officer to whom a writ of replevin is directed and delivered, take from the plaintiff a bond not conformed to the requisition of the statute, which is voluntarily executed by the plaintiff, he shall not avoid it on that account. How was this a voluntary bond more than that we have to deal with? The officer of the law appointed to take the bond and execute the writ required it, and the plaintiff could not get his goods without executing it. The officer, too, acted by the authority of the statute in requiring and in taking the bond. The variance was a very important one. By the condition of the bond taken, the penalty was declared to be forfeited if the plaintiff, in the replevin, did not

prosecute this suit to judgment and recover; whereas it should have been to return the goods and pay damages and costs. Chief Justice Parsons says: "If a plaintiff execute an informal bond voluntarily and to obtain possession of his goods, and the officer thereupon deliver him the goods, the defendant in replevin may, if he please, accept the bond, and pursue a remedy at law upon it against the obligor, unless the bond be void by the common law or by statute." As to a bond void by statute, the chief justice says: "if it be void, it must be so in consequence of the statute directing the form of the writ of replevin. True it is that the condition, in this case, is variant from the form there directed; but that statute does not prohibit the taking a bond of any other form, or declare a bond of any other form void." The chief justice considers this bond to be a voluntary bond. He observes, "they were not obliged to give this bond; and if a formal bond had been tendered to the officer he must have executed the writ;" and concludes, "the bond must be good, unless it be declared void by the common or statute law: we know of no law by which it is made void."

The case of Clap v. Gould, 8 Mass. 153, was a replevin for goods valued at one hundred and fifty dollars. The officer was directed to execute the precept if the plaintiff first gave bond in three hundred dollars. He took a bond for eight hundred. It was objected that "the bond was not taken according to the command of the writ, nor pursuant to the directions of the statute." The objection was overruled.

In 1811, the case of Armstrong v. U. S. [Case No. 549] was decided in this circuit. It was on the equity side of the court. The material circumstances were these. In June, 1796, one Smith was appointed to collect the internal revenue of a district in New Jersey, and gave bond with one Willis as his surety: he was afterwards required to give additional security, and in January, 1799, he, with the complainants as his sureties, executed a new bond, with condition that he had faithfully executed the duties of a collector, and would thereafter faithfully execute the same. Smith, the principal, was then indebted to the United States for collections previously made, and became further indebted during the year 1799. Suit was brought by the United States on the last bond, to recover the whole. The plaintiff offered to pay the amount which became due since January, 1799. On this case Judge Washington decided, "that the substantial form of the bond required by the act of congress was prospective only; and that when a statutory bond is taken, it ought to conform, in substance at least, to the requisitions of the statute; and if it go beyond the law, it is void, at least so far as it does exceed those requisitions. That this was an official bond, which the supervisor had a right to demand, and Smith was obliged to

give, if he meant to continue in office." The result of this case was, that the whole bond was not declared to be void; nor did the complainants ask it; but an injunction was granted, except as to the sum liquidated and stated as having been due since January, 1790, with interest. We must remark here, that the judge recognises the principle that the good and the bad parts of the bond might be separated, and the condition be affirmed and executed as to the one and rejected as to the other. It is something, too, that Mr. Stockton, whose ability and attention to the rights of his clients were not surpassed, did not ask an exemption from the responsibilities of this obligation, except as to that part of it which was not authorised by the law. I should not, perhaps, omit further to remark, on this case, that Judge Washington seems to me to express himself inaccurately when he says, or is reported to say, that this was an official bond which the supervisor had a right to demand, and Smith was obliged to give. I should rather say, with Chief Justice Parsons, that Smith might have refused to execute this bond, and should have tendered one made in conformity with the act of congress, and the supervisor would have insisted on his own form at his peril. Fifteen years afterwards the same judge expressed the same opinion upon the point we are examining. In the case of the U. S. v. Howell [Case No. 15,405], he says: "It has been made a point whether a bond, not being required to be taken by any act of congress, is a valid one? My opinion on this point is, that where a statute requires an official bond, and prescribes substantially the terms of it, it must conform to the requisitions of the statute; and if it go beyond them it is void, so far at least as it exceeds those requisitions."

The case of Dive v. Maningham, Plow. 60, cited by the defendant's counsel, was a decision upon the statute of 23 Hen. VI., which, as we have already seen, expressly declares all bonds, taken under the statute, to be void which are not made in the manner prescribed by the statute: it was the case of a bail bond given to the sheriff under that statute. The judgment of Chief Justice Montague is principally given on questions of pleading, and on the construction of the statute. As to one point he says, "and it seems to me that the obligation here is void by the letter of the statute;" which avoids "obligations taken in any other manner than the statute limits;" and a reason is given for this strictness, which has a peculiar application to the bonds provided for by that statute, and the abuses intended to be prevented by it. The case referred to by the chief justice in 7 Ed. IV. was also decided on the words of the statute: "the court there, also, held that if the obligation has not the conditions expressed in the statute, it is not the deed of the party." The chief justice, still continuing his remarks upon this statute,

does say: "I apprehend that if the obligation had been conditioned according to the statute, and had another thing also in the same condition, that the obligation, by reason of this condition, would be utterly void." And why? He has told us before, by the express letter of the statute. This, however, is the dictum of one of the judges, on a point not in the case decided.

There is nothing in Townsend's Case, Plow. 111, that has any judicial authority or bearing upon the question we are considering.

Lee v. Coleshill, Cro. Eliz. 529, was an action of debt on an obligation made to one Smith by the defendant, with a condition for the performance of covenants between Smith and Coleshill, whereby Coleshill, being a customer of London, made Smith his deputy, in the said office, and covenanted to surrender these letters patent before a certain day, and to procure new ones to himself and Smith; as also, that Coleshill should pay the executors of Smith three hundred pounds. The defendant showed that by the statute of 5 Ed. VI., all promises, bargains, and contracts, for the buying of divers offices, whereof this was one, were void. The plaintiff argued that he should have judgment, "for there be many covenants within the indenture, whereof some are good and lawful, and for these, doubtless, the obligation remains good." The defendant's counsel replied that "all parts here of this indenture concern the exercising of the office; and, if any of the covenants concerning other matters should be accounted good, yet the obligation is void in all, for the statute saith, the bond to that purpose shall be void, and then it is not possible it should be void to this intent and good for another." The argument of the defendant, here, was on the words of the statute expressly declaring the bond to be void; and also, on the allegation that all parts of the indenture concerned the exercising of the office. We do not know on what ground it was decided. The reporter merely says; "wherefore the court here did not deliver any great opinion; but, absente Walmsley, adjornatur." And it was afterwards adjudged, that the obligation was void in every part, being against law.

A distinction, and it is a natural one, seems to run through these cases. It is this. Where a statute authorises a bond to be taken in a prescribed manner or for certain expressed purposes, and declares, that if it be not so taken, the bond shall be void, then it may not stand good for any purpose, however lawful in itself, if it be not conformable to the statute; but where the statute only directs the condition of the bond, and does not avoid it if it should not conform to the directions, and something more than that condition is added to it, the bond may be allowed to cover the authorised part of the condition, and so much may be recovered under it, and no more.

The case of U. S. v. Morgan [Case No.

15,809], has been greatly relied upon by the defendant, and calls for a particular attention. It was an action on an embargo bond, tried in this district at April sessions, 1811. The plea, to which there was a demurrer, presented three objections to the bond. (1) That the collector, and not the United States, should have been the obligee. (2) That the condition of the bond omits to insert the words "dangers of the sea excepted." (3) That it binds the defendant to deliver to the collector at Philadelphia, where the bond was taken, the certificate of relanding in the United States, within three months from the date of the bond. None of the arguments of counsel are given, and the opinion of the court is very brief. Judge Washington says: "The bond is a statutory instrument; the officer had no authority to take it, but in virtue of a power conferred on him by the government of the United States; the power should have been at least substantially pursued. The embargo law prescribes the material parts of the bond to be taken. It is to be in a sum of double the value of the vessel and cargo, with the condition that the goods shall be relanded, dangers of the sea excepted." We see, then, that the bond in that case, stipulated for a relanding absolutely, when the law allowed an essential exception, and required the relanding accordingly. The bond was declared to be void by the judge. (1) Because the condition required the obligors to reland the cargo in the United States, although they might have been prevented by a peril of the sea. (2) Because the condition requires the obligors to return the certificate of relanding to the collector at Philadelphia, within a limited time: whereas, the law did not impose upon the obligors, the necessity of returning the certificate to that officer at all, much less to do it within a prescribed period. In comparing this case with that under our consideration, an important difference at once strikes us. The condition of that bond was not, as ours is, in its nature or terms divisible. There was not in it a part which was bad, and a part which was good, and so set forth that they might be separated from each other; that the one might be retained, and the other rejected; that the obligation might stand good for the one, and not for the other; that the United States might say, on the record, we ask for a judgment only on so much of this condition and its forfeiture, as is according to law. It is impossible to make the bond in Morgan's Case conform to the law, by taking away any part of it. You must make altogether a new and a different condition; you must add an important qualification or exception given by an act of congress, and not given by the bond; and you must essentially change, indeed expunge another part of the condition, which was not warranted by the law. In short, you must make a new contract between the parties. It was a very plain case, and this may account

for the little attention that was given to the argument. Three or four cases appear to have been cited for the defendants, and not one by the United States. We may say that the ground was abandoned by the plaintiffs, and very properly.

I ought not to omit some general remarks or principles which fell from the judge. He says, that if the bond "bind the obligors to do more than the law requires, it is not the bond which the officer was authorised to take, and all is void." Now this is true as applied to such a case as he had in his view; where an absolute relanding was required, instead of a conditional one; and where a certificate was required to be delivered to a certain officer, and at a certain time, neither of which was warranted by the law. But that the judge did not mean to say that in all cases, in which the bond binds the obligor to do more than the law requires, all is void, may be inferred from his expressions in the cases already cited; one of them, that of Armstrong v. U. S., being decided six months after Morgan's Case; and the other, that of U. S. v. Howell, fifteen years later. In both of these, he qualifies the principle, by adding, "at least so far as it exceeds the requisitions of the law."

The case of U. S. v. Hipkin [Case No. 15,371], was decided in the district court at Norfolk. No opinion was given by the court, nor was any necessary. The objection to the bond was that the condition was contrary to the express provisions of the law. It was not a case of a condition with several stipulations, divisible from each other, some according to law, and others not so. The district attorney admitted that no recovery could be had for the breach of a condition that was not authorised by the law which required the bond.

The cases of Rex v. Croke, Cow. 29, and Thatcher v. Powell, 6 Wheat. [19 U. S.] 119, sustain the general principle that powers given by statutes to public officers must be strictly pursued. These cases have no particular analogy to this.

In the case of Bolton v. Robinson, 13 Serg. & R. 193, Judge Duncan gives the opinion of the court, and says: "This obligation is a statutory one, with an entire unwarranted condition; so far from conforming to the requisitions of the act it is in direct contradiction." He then quotes the opinion of Judge Washington, not for his general expressions in Morgan's Case, but with their qualifications in that of U. S. v. Armstrong, "that a statutory obligation ought to conform, at least, in substance, to the requisition of the statute, and if it go beyond the law, it is void, at least, so far as it exceeds the requisition." The judge says, "The act required bail in the nature of special bail; the bail taken was absolute for payment of the debt. The whole was excess, and the condition was therefore against law. It did not consist of several parts, some of which were

good, and some bad; and therefore the whole was void."

The case of Norton v. Syms, Moore, 856, so far as it bears upon our point, refers to Coleshill's Case, which we have already considered.

From this examination of the cases we may consider it to be settled, that if a bond be taken at the common law, with a condition, in part good and in part bad, a recovery may be had on it for a breach of the good part. This being the general common law principle, it is incumbent upon the defendant to show that a different rule is established in regard to a statutory obligation, on a bond authorised and required to be taken by a statute. An able and laborious endeavour has been made to sustain this distinction by the cases, and arguments drawn from them, to which I have referred with a careful examination. In my opinion the distinction is not supported, as applicable to a case like the present, in which there is nothing in the statute declaring that bonds, that vary from the prescribed form, shall be altogether void, and in which the good part of the condition may be easily separated from the bad. Nothing is required to be added to the contract; and nothing to be taken from it, but what is favorable to the obligor, by diminishing the extent of his responsibility.

Judgment for the United States on the demurrer.