## Case No. 15,073.

### UNITED STATES v. FARRELL et al.

[8 Biss. 259;[1] 24 Int. Rev. Rec. 231.]

Circuit Court, N. D. Illinois. July 8, 1878.[2]

INTERNAL REVENUE—DESTRUCTION OF SPIRITS BY FIRE — TAXES THEREON — WHEN TAX ON DISTILLED SPIRITS ATTACHES.

1. The fact that distilled spirits placed in a distillery warehouse were destroyed by fire, because of the absence of the government storekeeper from the warehouse, does not release the bondsmen from liability for the amount of the taxes which were due on the spirits. The government cannot be made a loser by a neglect of duty by an officer.

2. The liability of a distiller for the tax on distilled spirits attaches so soon as the spirits are produced, and if he places them in a warehouse, giving bond for the payment of the tax on their removal and within one year from the date of the bond, and the warehouse and spirits are destroyed without any negligence on his part, this does not release him from liability for payment of the tax.

3. A destruction by fire is a "removal" within the meaning of the statute and the bond.

[This was a suit against De Witt C. Farrell and others, brought on a distiller's bond.]

Mark Bangs, U. S. Dist. Atty.

McCagg, Culver & Butler and S. D. Puterbaugh, for defendants.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 99 U. S. 221.]

BLODGETT, District Judge. This is a suit upon a distiller's warehousing bond, dated June 13, 1870, given by the defendant Farrell, as principal, and signed by the other defendants, as sureties, in the penal sum of $33,000, conditioned for the payment by Mr. Farrell, as principal, to the collector of internal revenue of the Fifth collection district of this state, of the tax on 449 barrels of distilled spirits, containing $32,184\ 89/100$ gallons of proof spirits, which were entered for deposit in the distillery warehouse attached to Mr. Farrell's distillery in Peoria in said district, before said spirits could be removed from said warehouse, and within one year from the date of said bond. It is admitted that on the 27th day of July, next after the spirits were deposited in the warehouse and the bond given, a fire broke out in a building not connected with the Farrell distillery or warehouse, by which Farrell's distillery and warehouse took fire, and the same were wholly destroyed with the contents, including the spirits described in the bond, without any negligence or carelessness on the part of Farrell or those in charge of the distillery. It is also shown by the proof, and not disputed, that the warehouse in question was in charge of the government storekeeper, who had the keys thereof, and that he was not present at the time the fire broke out, and for some time thereafter. And the proof tends to show that if he had been so present at the time it became evident that the distillery premises must burn, a portion, if not all, the spirits in the warehouse might have been saved, there being at the time in the warehouse about 2,000 barrels of spirits, and the spirits in controversy only amounting to 449 barrels. The defendants deny their liability for the tax upon the facts shown.

The first point insisted upon is, that the loss occurred by reason of the absence of the storekeeper from the warehouse at the time that the fire broke out, and until it was too late to remove the spirits therefrom. The fire occurred about noon, and the proof shows that the storekeeper had gone to his dinner, and the distillery was not then in operation, and his constant presence was not needed to superintend the operation of the distillery. I do not understand that any law or regulation requires the constant presence of the storekeeper at the warehouse and distillery when the distillery is not in operation; but even if it did, the rule is well settled that the government cannot be made a loser by the neglect of duty by an officer.

The defendants in this case claim, however, that the United States supreme court has, in the case of Clinkenbeard v. U. S., 21 Wall. [88 U. S.] 65, held that the failure of an officer to perform his duty releases the distiller. An examination of that case shows, however, that that was a case where the United States itself, or rather the de-

partment itself, was at fault, and not the officer of the department, in which I think there is a clear distinction. The operations of the distillery were suspended in that case for a number of days by reason of the failure of the treasury department to appoint a storekeeper; and the suit was brought against the distillery for the recovery of the amount of tax which the distillery should have paid according to its capacity, or, in other words, for its capacity tax. And the supreme court simply held that during the time the operations of the distillery were suspended for the want of a storekeeper the capacity tax should not be charged against the distillery. The case is clearly placed upon the neglect of the government, and not upon the neglect of a subordinate officer of the government to perform his duty; that the distillery was not legally in condition to legally run during the time that there was no storekeeper, therefore there was no earning of the capacity tax.

But the main point insisted upon in the argument is, that the distiller is not liable on his bond until he asks and obtains a permit to remove the spirits from the warehouse; that the act of paying the tax and removal must be simultaneous.

It is sufficient to say, that I do not concur in this view of the law. Section 3,248, Rev. St., provides that the tax shall attach to distilled spirits as soon as the same is in existence as such; that is, the distiller becomes liable for the tax as soon as the spirits are produced; but by the warehousing system the distiller is allowed one year in which to pay the tax, or such time as he chooses within one year, by depositing the spirits in a warehouse, and giving a bond. He is a debtor to the government to the amount of the tax as soon as the wines are produced, but upon certain conditions, is allowed time for making payments. Sections 3,287, 3,293, and 3,294, when taken together, clearly show that the warehousing bond is taken solely for the purpose of securing the payment of the tax at the convenience of the distiller within one year. This view is further sustained by the provisions of law which fix the tax to be paid by the amount of spirits which are gauged into the warehouse, and not by the amount which are gauged out. If the tax was not fixed until the removal, that would be the time at which to gauge the spirits, and determine the amount of the tax; but instead of that, it is the amount gauged into the warehouse, and the amount which is at that time marked upon the barrels, which determines the amount of tax to be paid. The letter of the bond, too, provides for the payment of the tax on a fixed and certain quantity of spirits before such spirits shall be removed from such warehouse, and within one year from the date of the bond. By the terms of the bond the distiller must pay the tax on the removal of the spirits, it matters not wheth-

er the removal is caused by their evaporation or combustion from fire, or by the deliberate act of the distiller; in either case they are removed, and the condition of the bond is broken. This may seem a harsh rule but it is the only guide the court has to go by. The court cannot make the contract, but must construe and enforce that which is made by the parties.

This rule is clearly laid down in U. S. v. Keehler, 9 Wall. [76 U. S.] 83; U. S. v. Prescott, 3 How. [44 U. S.] 578; and U. S. v. Dashiell, 4 Wall. [71 U. S.] 182. The view I take is much strengthened by the provisions of section 3,221 of the Revised Statutes, which reads as follows: "Sec. 3,221. The secretary of the treasury, upon the production to him of satisfactory proof of the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof, of any distilled spirits, while the same remain in the custody of any officer of internal revenue in any distillery warehouse, or bonded warehouse of the United States, and before the tax thereon has been paid, may abate the amount of internal taxes accruing thereon, and may cancel any warehouse bond, or enter satisfaction thereon in whole or in part, as the case may be. And if such taxes have been collected since the destruction of said spirits, the said secretary shall refund the same to the owners thereof out of any moneys in the treasury not otherwise appropriated." Now the question naturally occurs here: Why clothe the secretary of the treasury with the power to abate the tax if none was due? Why give the secretary of the treasury the power to remit a claim against a person, if the government has no claim against him? The whole theory upon which that statute is based is to my mind clear that the tax was due upon the production of the spirits, and that, as an equitable consideration, the secretary of the treasury may, in his discretion, abate the tax, if he sees fit.

The questions involved in this case I admit are not entirely free from doubt, and I have not the light of much direct authority upon the question. No case, I think, has ever been decided by the supreme court of the United States directly involving the question here raised. There is the case of Insurance Co. v. Thompson, 95 U. S. 547, where it seems to me that the plain intimation of the court is in favor of the view of the law which I am now taking. In that case certain wines were placed in a bonded warehouse connected with the distillery; the parties interested in those wines insured them, and they not only insured the value of the wines themselves but the government tax thereon; they were destroyed, as the wines in question were, by an accidental fire, and suit was brought upon the warehousing bond and the amount of tax recovered on the warehousing bond. After the

recovery of the amount of the tax and the payment of the judgment, as I infer from the record in the report, the parties who had obtained insurance, the owners of the wine and the parties interested, brought suit against the insurance company; and it was contended in that case that the amount of the government tax was not an insurable interest; the court below held that it was and rendered judgment, and the case was taken to the supreme court and affirmed. So that the argument from that case is that the party placing wines in a government warehouse or in a bonded warehouse, has an insurable interest, to the amount of the cost or value of the wines and the government tax, and can, therefore, insure for that amount. I know the fallacy that courts frequently are led into by following a case where the direct question is not decided, that is before the court, yet it seems to me that in the absence of authority, some force, at least, ought to be given to that case; and, though the case is not entirely free from doubt, yet my conclusion is, that the defendant was liable for the tax on these spirits from the time they were purchased, and they, like the importation of goods subject to customs dues, where the importer obtains a certain amount of indulgence of time for the payment of his customs duties, by placing the goods in a bonded warehouse, yet at the same time the duties are due the moment the goods are imported and arrive, and the destruction of the goods afterwards would not release him.

[There will be a finding for the plaintiff of the penal sum of the bond, and as damages, of the amount of the tax. You may make that computation, Mr. Bangs.

[I hardly think any special finding will be needed in the case, because the stipulation as to the facts is broad enough, and it will go up in the record, if the parties wish to take the case up. If a special finding is necessary, why counsel may have it. A certain finding will be necessary in regard to whether the storekeeper was there or not.] [3]

There will be a finding for the plaintiff.

This opinion was affirmed by the United States supreme court in 99 U. S. 221.