58

# SUPERIOR COURT OF BALTIMORE CITY.

Filed December 29, 1909.

MAYOR AND CITY COUNCIL OF BALTIMORE

VS.

J. SEWELL THOMAS AND THE UNITED STATES FIDELITY AND GUARANTY COMPANY.

*Edgar A. Poe*, City Solicitor, and *Sylvan Hayes Lauchheimer*, Deputy City Solicitor, for Mayor and City Council of Baltimore.

*J. Kemp Bartlett* for United States Fidelity and Guaranty Company.

*William S. Bryan, Jr.*, for J. Sewell Thomas.

NILES, J.—

Since the overruling of the demurrer to the declaration in this case, on the 27th day of October last, the defendants have filed a large number of pleas, upon many of which issues of law have been raised which are now before the court.

Disposition will be made of each plea, and the replications, if any, thereto, separately at the conclusion of this opinion, but it seems best first to set forth in general terms what this court considers to be the principles applicable to the case.

This action is brought upon the official bond of the defendant, Thomas, as Register of the City of Baltimore, the condition of which is, as follows, viz: "That if the above bound J. Sewell Thomas shall well and faithfully execute the duties of said office in all things appertaining thereto, and shall well and truly account for and pay over, all money, belonging to the said Mayor and City Council, which may in any manner come to his hands while holding said office, or which may be received by him by virtue of said office, as directed by the laws of the State of Maryland and the ordinance of the Mayor and City Council of Baltimore, then this obligation to be void, otherwise to remain in full force and virtue at law."

The defendants contend:

1st. That the condition of the bond above set forth, when properly construed, means nothing more than if it had simply read that the register should "well and faithfully execute the duties of his office in all things appertaining thereto."

2nd. That if the words actually used in said condition mean anything more than this, the bond is as to such excess, unauthorized in law, and thereby either the bond in toto, or at least such excess, becomes illegal and void.

These two contentions, each strenuously insisted upon, naturally produce a defence with a double aspect.

### A.

Certain of the pleas now before the court are filed upon the theory that the condition of the bond does contain unauthorized and illegal clauses; that thereby the bond became such as neither the municipality nor any of its officers had power to accept; that their action in taking it was ultra vires, and therefore, by true construction of law, no bond was ever accepted by the city, and no obligation upon the alleged bond in suit ever came into being.

This contention will not be considered now, for the reason that it has already been decided in this case, upon the demurrer to the declaration, that, under the Maryland decisions, (1) and under most of the authorities cited by the defendants (2) such unauthorized or illegal clauses even did they exist would simply be treated as surplusage, leaving the bond in this case as if it had contained only those clauses which are confessedly authorized by law; and this would, of course, be a legal bond

which the city authorities are both authorized and required to demand and receive.

## B.

Other pleas now before us, assume that the bond either according to the natural meaning of the words thereof or by necessary construction of law—only covers failure to properly perform the duties of the office of register and that the register is simply a custodian of the city's money bound only to exercise such care as is required of the ordinary bailee for hire.

Certain pleas then set up the fact that the money sued for was stolen without negligence or fault of any kind upon the part of the register, and certain other pleas allege that the money sued for never came into the register's hands "by virtue of said office as directed by the laws of the State of Maryland and the ordinances of the Mayor and City Council of Baltimore," but came into his possession irregularly and because other city officials failed to properly perform their duty.

The main question at this juncture of the case to be decided is, whether the facts alleged in any of these pleas constitute a legal defense to an action on the bond.

Upon this question, this court agrees entirely with the position of the city.

By reference to the condition of the bond above set out, it will be seen that the obligations assumed thereby include this, viz: That "the above bound J. Sewell Thomas shall * * * well and truly account for, and pay over all money belonging to the said Mayor and City Council which may in any manner come to his hands while holding said office."

Conceding for the time that this condition is broader than that prescribed by ordinance, no authority has been produced, by the vast labor and research of counsel for defendant, that satisfies this court that the bond would not be valid as a voluntary common law bond.

By statute (City Charter, Sec. 35) the register is declared to be the "custodian of all money belonging to the Mayor and City Council of Baltimore."

By ordinance (City Code, Art. 6, Sec. 23) among other duties the City Register is required to "take under his charge all money now belonging to, or which may hereafter belong to the Corporation," etc.

By ordinance (Baltimore City Code, Art. 6, Sec. 19) it is provided that "The City Register shall, before he enters upon the duties of his office, execute a bond to the corporation * * * with the condition that he will faithfully discharge his duties and the trust reposed in him."

Certainly a bond requiring a "custodian" of the city's money to "well and truly account for it" can hardly be said to be "illegal" or "forbidden by statute," or to "contravene any principle of morality or public policy," when the law itself requires, as a condition precedent to his becoming such "custodian" at all, that he give bond to "faithfully discharge his duties," and the only objection to the wording of the bond, as actually given, is that it limits the number of valid excuses for failure to perform his said duties, which might have been made had more general language have been used.

Yet our Court of Appeals have held that the only bonds that when properly executed are not valid voluntary bonds are such as are "illegal," or "forbidden by statute," or "contravene some principle of morality or public policy." (3)

Defendant's counsel strenuously contend that this rule as to voluntary bonds is only applicable to natural persons, and to sovereignties like the United States or a State Government, (4) but cannot apply to a municipal corporation in Maryland in such a case as the present one.

To maintain this contention many cases were cited at bar, in some of which bonds taken in violation of statutory provisions were held void, (5) in others of which statutory bonds in excess of the requirements of the statutes were held void only as to such excess, (6) and in others of the law governing corporate contracts are laid down, and strict rules were declared as to the necessity of corporations acting within their corporate powers, and as to ultra vires acts. (7)

With all their industry, however, they were unable to produce one case where an official bond was given by a properly appointed receiver of public moneys, required by law to give bond for the faithful performance of his duties, and that bond was declared

void because its language imposed a more stringent accounting than was required by the words of the statute itself.

On the other hand, the counsel for plaintiff have produced an overwhelming array of authorities holding that where a bond for the safeguarding of public moneys is either allowed or required by statute, any bond, although not according to the statute, if it accomplishes the same purpose in general, is good as a voluntary bond, and this whether the obligee be the Federal Government, (8) a State government, (9) a county, (10) a city, (11) or a school district. (12)

In Maryland it has been flatly held that the official bond of a receiver of public moneys, given to a county, which varies from the terms of the statute by leaving out certain provisions of the contract is to be construed according to its own terms. (13)

It would seem to follow that a bond of the same kind varying from the terms of the statute by inserting certain provisions would be construed according to its terms.

This would appear unquestionable if the bond were given to a county, and it would be hard to imagine that the City of Baltimore, to which a whole Article of our Constitution is devoted (Art. XI), and in regard to which the Code (Art. I, Sec. 13) provides that "the word county shall include the City of Baltimore unless such construction would be unreasonable," would have less power in this regard than a county.

Indeed, the Court of Appeals could hardly have said in any connection, as it did say, in speaking of municipal legislation—that "counties although not possessing the general powers of municipal corporations under special charters are regarded as quasi corporations (14) had they not felt that such a corporation as the City of Baltimore had far more implied and inherent power than a county.

If, then, this bond, as it is written, be appropriate to the securing and safe-guarding of the public funds, and the city had a right to accept it, and if it were executed as a voluntary bond, and without duress, the obligors are bound according to its tenor, and this courts holds that the meaning of its words is that the obligors bind themselves to account for, at all events, any money that belong to the city, that may come into the hands of the register by virtue of his office.

There is no exception expressed, and by the almost unanimous decisions of the courts of this country if a receiver of public moneys, and his sureties, execute an official bond binding themselves without qualification or exception to "account for and pay over" such moneys, they add to the obligations which the law imposes upon the officer as bailee, the obligations which they themselves have assumed by their own contract; the ordinary law of bailment no longer controls, but is superseded by the law of the bond, and public policy will allow no exception to be written into this bond, except (according to most authorities) the act of God or a public enemy. (15)

Certainly neither the theft of money by a clerk, without negligence on the part of the register, nor the receipt by the register, in any irregular way, of money for which the bond obliges him to account, are within these exceptions.

This court, therefore, is constrained to hold the defenses above alluded to insufficient.

Were it necessary—as it probably is, in order to properly pass upon the 7th plea of the fidelity company—this court would go further and hold that the words of the bond, above construed, are nothing more than cumulative to, and in amplification of the condition to "well and faithfully execute the duties of said office in all things appertaining thereto," and were that the only condition of the bond the same result would follow as to the invalidity of the defenses above considered.

The weight of the authorities, as shown in the note, (16) is overwhelmingly to the effect that any official who is a receiver of public moneys and has given bond to well and faithfully execute the duties of his office in all things appertaining thereto, is not relieved from accounting for the money he has received, and paying it over to the proper authorities, by reason of the fact that it has been stolen from him without his negligence; and this court quotes and adopts as its individual opinion the following sentence from the last decided case upon the subject which has been brought to its attention. (17) "After a careful consideration of the matter we are of the opinion that the

reasons of public policy advanced in support of the rule of strict liability, amply justify its adoption."

The demurrers to the 3rd, 5th and 6th pleas filed by J. Sewell Thomas will be sustained. The demurrer to the replication to his 4th plea will be overruled.

The demurrers to the 3rd, 4th, 5th, 7th, 8th, 9th, 10th, 11th, 16th, 17th, 18th, 20th and 22nd pleas filed by the United States Fidelity and Guaranty Company will be sustained. The demurrer to the replication filed to its 6th plea will be overruled.(19).

Note 1—Vansant vs. State, 96 Md. 122 (1902).

Note 2—Board of Education vs. Grant, 107 Mich. 151 (1895).

U. S. vs. Brown, 24 Fed. Cas. 1250 (1830).

Van Deusen vs. Hayward, 17 Wend. 67 (1837).

Walker vs. Chapman, 22 Ala. (1853).

Woods vs. State, 10 Mo. 698 (1847).

Shunk vs. Miller, 5 Pa. St. 250 (1847).

U. S. vs. ———, 24 Fed. Cas. 729 (1811).

Chambers vs. Cline, 60 W. Va. 588 (1906).

State vs. McGuire, 46 W. Va. 320 (1899).

Brandt on Suretyship, Vol. II, Sec. 617 (Ed. 1905).

Note 3—Harris vs. Register, 70 Md. 109 (1899).

Note 4—United States vs. Tingey, 5 Peters, 115 (1831), decides expressly that "a bond voluntarily given to the United States, and not prescribed by law is a valid instrument upon the parties to it in point of law." The court then adds: "The United States have in their political capacity a right to enter into a contract, or to take a bond, in cases not previously provided for by law.

It is an incident to the general right of sovereignty, and the United States, being a body politic, may, within the sphere of the Constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confided, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers.

"To adopt a different principle would be to deny the ordinary rights of sovereignty, not merely to the general government but even to the State governments within the proper sphere of their own power, unless brought into operation by express legislation."

The counsel for the defendants urge that the reason for the decision is here given, and that the decision rests solely upon the ground that the United States are a sovereignty, and so differ from a Municipal corporation.

It seems to this court that the real basis of the decision is found in the words, "The United States have in their political capacity a right to enter into a contract," and "the United States being a body politic."

This case decided in 1831, was followed by the case of the United States vs. Bradlay, 10 Pet. 343 (1830), where the power of the United States to accept a bond was placed by Judge Story upon its "capacity to take a voluntary bond in cases within the scope of the powers delegated to the general government by the Constitution, through the instrumentality of the proper functionaries, to whom these powers are confided."

It was again followed by United States vs. Linn, 15 Peters, 290 (1841).

As to the power of Congress to accept the instrument in this case as a voluntary bond, not a word is said about "sovereignty," and the real ground of the decisions appears from the following extracts from Judge Thompson's opinion:

"If this is a contract entered into by competent parties, and for a lawful purpose, not prohibited by law, and is founded upon a sufficient consideration, it is a valid contract at common law. In the case of the United States vs. Tingey, 5 Peters, 115, it was held by this court, that the United States, being a body politic, have a capacity to enter into contracts, and take bonds or securities within the sphere of their constitutional power, and appropriate to the just exercise of those powers," &c.

See also U. S. vs. Hodson, 10 Wall. 395 (1870); Moses vs. U. S., 166 U. S. 586 (1896), where the court quote this language from the Tingey case: "The right to take such a bond is, in our view, an incident to the duties belonging to such a department, and the United States, having a political capacity to take it, we see no objection to its validity in a moral or legal view."

See also Jessup vs. U. S., 106 U. S. 147 (1882).

Diamond Match Co. vs. U. S., 24 Blatch. 442 (1887).

Chadwick vs. U. S., 3 Fed. Rep. 750 (1880).

In the cases where voluntary bonds given by receivers of public money for the due performance of their duties have been upheld in favor of States, although the bonds were not valid under the provisions of the statutes, this Court finds nothing to indicate that the ground of the decision was the fact that the State was a sovereignty.

Bank vs. Smith, 5 Allen, 413 (1862).

Nevada vs. Rhoades, 6 Nevada, (1871).

State vs. Taylor, 10 S. Dakota 182 (1897).

Note 5—Breen vs. Kelly, 45 Minn. 352 (1891), where it was held that a bond voluntarily executed to a county for the security or benefit of third persons is, unless expressly authorized by law, void as to such third persons.

Roberts vs. State, 34 Kansas 151 (1885), an action on a recognizance taken by the Sheriff.

State vs. Shirley, I Iredell Law, 597 (1841), where the action was on an alleged constable's bond, but the court held that the constable's appointment was "utterly null" and, therefore, the official bond falling with the office itself, the magistrate had no power to accept it.

Cook vs. Freudenthal, 80 N. Y. 202 (1880), a case of a bond given to a sheriff to secure a debtor's discharge, which bond was made void by the "explicit terms of the statute."

Toles vs. Adee, 91 N. Y. 562 (1883), a case of a bail bond.

Note 6—See cases cited under Note 2.

Note 7—See M. & C. Council of Balto. vs. Keyser, 72 Md. 107 (1890).

Heiskell vs. Balto., 65 Md. 125 (1886).

Horn vs. M. & C. Council of Balto., 30 Md. 216 (1869).

Baltimore vs. Eschbach, 18 Md. 276 (1862).

Balto. vs. B. & O. R. R., 21 Md. 50 (1864).

1 Dillon on Municipal Corporations, Secs. 89-208 (1890).

Brenham vs. Water Co., 67 Texas 542 (1887).

Md. Tube Works vs. West End Imp. Co., 87 Md. 207 (1898).

Boyce vs. M. E. Church, 46 Md. 373 (1877).

Steam Navigation Co. vs. Dandridge, 8 G. & J. 248 (1836).

Baltimore vs. Musgrave, 48 Md. 283 (1878).

Albert vs. Savings Bank of Baltimore, 1 Md. Ch. 407 (1849).

Smith vs. Ala. Life Ins. & Tr. Co., 4 Ala. 558 (1843).

Life and Fire Ins. Co. vs. Mechanics F. I. Co., 7 Wend. 31 (1831).

N. Y. F. I. Co. vs. Ely, 5 Conn. 560 (1825).

Mealey vs. Hagerstown, 92 Md. 741 (1901).

Cumberland vs. Willis, 50 Md. 138 (1878).

Barnes vs. City of Philadelphia, 3 Phila. 409 (1869).

Baltimore vs. Reynolds, 20 Md. 1 (1863).

Baltimore vs. Keyser, 72 Md. 106 (1890).

Lazear vs. National Union Bank, 52 Md. 125 (1879).

Safety Ins. Wire & Cable Co. vs. M. & C. C. of Balto., 74 Fed. Reporter 366 (1896).

W. Md. R. R. Co. vs. Blue Ridge Co., 102 Md. 307 (1905).

Note 8—See cases cited in Note 4.

Note 9—See cases cited in Note. 4.

Note 10—Manitowoc Co. vs. Truman, 91 Wis. 1 (1895).

Buhrer vs. Baldwin, 100 N. W. Rep. 468 (1904); 137 Michigan, 263 (1904).

Edmiston vs. Concho Co., 21 Tex. App. 339 (1899).

Supervisors of St. Joseph vs. Coffenbury, 1 Michigan, 356 (1850).

Perkins Co. vs. Miller, 55 Neb. 141 (1898).

Note 11—Mayor of Brunswick vs. Harvey, 114 Ga. 733 (1901).

City of Marshall vs. Bailey, 27 Tex. 686 (1864).

Delker vs. Owensboro, 61 S. W. Rep. 362 (1901).

Note 12—Board of Education vs. Fonda, 77 N. Y. 350 (1879).

Note 13—Howard County vs. Hill, 88 Md. 111 (1898).

Note 14—Bradford vs. Langford, 73 Md. 428 (1891).

Note 15—See cases cited under Note 16.

All of these which support the proposition to which they are there cited support a fortiori the proposition above laid down, while many of the decisions of the minority courts that are cited as opposed to the doctrine there maintained would appar-

ently have been otherwise had the bond in those cases been similarly worded to the bond now being considered.

Note 16—The liability of a government officer for money stolen from, or otherwise lost by him, without his fault, is a question upon which, as stated above in the opinion, the overwhelming weight of authority seems to be to the effect that the officer and, consequently, his sureties are liable for such a loss. At the same time, no one can fail to recognize that there is much to be said upon the other side of the question. and a few courts, and some most excellent text writers, support a contrary view.

The first case to which this court has been referred, is that of U. S. vs. Prescott, 3 How. 578, decided in 1845, in which Prescott, with his sureties, was sued on a bond given for the faithful performance of his duties as receiver of public moneys at Chicago, and pleaded in his defence, that the moneys for which the action was brought, had been feloniously stolen, taken and carried away from his possession by some person or persons unknown to him, and without any fault or negligence on his part.

A demurrer to this plea was sustained and the court held that "the obligation to keep safely the public money is absolute, without any condition express or implied, and nothing but the payment of it, when required, can discharge the bond," and also held that "Public Policy requires that every depositary of public money should be held to a strict accountability, not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity."

This case was followed by every Federal decision without question down to the year 1872. In that year the case of U. S. vs. Thomas, 15 Wall. 344, was decided, in which Justice Bradley, speaking for the majority of the court, used language, which certainly qualified the absolute liability spoken of by Justice McLean in the Prescott case by introducing the exception of the Act of God and public enemy, and would seem to go even further, and cast doubt upon the fundamental basis of the whole doctrine.

Justice Miller, in a dissenting opinion, in the same case, expressed his disapproval of the doctrine, but dissented from the majority opinion of the court on the ground, that it was merely throwing doubt upon the previous decisions without either affirming or overruling them.

From 1872 to 1902, when the case of Smythe vs. The United States, 188 U. S. 156, was decided, there seemed to be a feeling expressed in 1 Michigan Law Review (1903) pp. 557-585, by Gustav Stein, that when the question should be again considered by the Supreme Court, there would be a modification of the doctrine of the Prescott case.

Upon the contrary, however, in the Smythe case, the principle of the Prescott case was expressly affirmed, and was said to be not affected by the case of the United States vs. Thomas, and, as Mr. Stein, the writer above referred to, says: "There is now no doubt as to what is the rule and

the reasons therefor in the Federal courts. The court virtually adopted the Prescott case as a ruling precedent. * * * The two theories for which the Federal courts may be said to stand are the demands of public policy and the contract expressed by the language of the bond."

The Federal cases referred to are:

U. S. vs. Prescott, 3 How. 578 (1845).

U. S. vs. Morgan, 11 How. 154 (1850).

U. S. vs. Dashiell, 4 Wall. 182 (1866).

U. S. vs. Koehler, 9 Wall. 84 (1869).

Boyden vs. U. S., 13 Wall. 17 (1870).

Bevans vs. U. S., 13 Wall. 56 (1871).

U. S. vs. Thomas, 15 Wall. 344 (1872).

Smythe vs. U. S., 188 U. S. 156 (1902).

Clay County vs. Simonson, 1 Dakota Ter. 403 (1877).

U. S. vs. Farrell, 8 Biss. 259 (1897).

U. S. vs. Bryan, 82 Fed. Rep. 290 (1897).

U. S. vs. Bryan, 90 Fed. Rep. 473 (1898).

Bosbyshell vs. U. S., 77 Fed. Rep. 944 (1896).

U. S. vs. Zabriskie, 87 Fed. Rep. 714 (1898).

Smythe vs. U. S., 107 Fed. Rep. 376 (1901).

U. S. vs. Smythe, 120 Fed. Rep. 30 (1900).

Pind vs. U. S., 111 Fed. Rep. 989 (1901).

U. S. vs. Fordyce, 122 Fed. Rep. 962 (1903).

The writer above referred to, Mr. Stein, states that of the States and Territories, which follow the doctrine of the United States, are Colorado, Iowa, Kentucky, Mississippi, Nevada, New Jersey, Ohio, Texas, Wisconsin, Pennsylvania, Washington, Kansas, E. Illinois, Minnesota, Nebraska, Oklahoma, Massachusetts, Michigan and Missouri.

Mr. Stein also states, that another group of courts hold, that such an "officer is a bailee, bound to a high degree of care—some go so far as saying, the highest degree of care which a very prudent man would use in the most important affairs—but, in the absence of express terms in statutes to raise an additional liability, or an express undertaking in the bond to assume such liability, the officer and his sureties are not liable where money has been lost without the default, misconduct, or negligence of the custodian, and a respectable minority uphold this view.

Of the states in favor of this principle are, Alabama, Colorado, California, Maine, Montana, South Carolina, Tennessee and Wyoming, as also "England."

According to the authorities to which this court has been referred, and which it has examined, this is substantially correct as to the attitude of the different courts, but it needs some qualification.

Colorado is placed upon both sides; but should be upon the side of the majority, the case first decided seeming to favor the minority view having been overruled, or at least distinguished. Georgia, Indiana and West Virginia and perhaps Arkansas should be added to the majority list. Kentucky should be taken from the majority list and placed among the minority.

The cases cited to sustain the placing of the courts of England among the courts holding the minority view do not seem to sustain such a deduction, and it would be unfair to place the courts of England on either side. It will be noticed, by looking at the dates of the different decisions, that prior to the decision of the case of United States vs. Thomas, there was a practical unanimity among the State courts in following the doctrine of the Prescott case. See McEachson vs. Township, 35 N. J. Law 529.

Most of the leading decisions favoring what may be called the "more Liberal" doctrine were made in the interval between 1872, the date of the Thomas case and 1902 the date of the Smythe cases. There were, in many instances, made by a divided Court and, in almost every instance, they alluded to the Thomas case as modifying or virtually overruling the Prescott case, a construction of the Thomas case which the Supreme Court itself in Smythe vs. United States, 188 U. S. 156, expressly repudiates.

### STATES FOLLOWING THE DOCTRINE OF THE PRESCOTT CASE.

**Massachusetts:**

Inhabitants of Hancock vs. Hazzard, 12 Cush. 112 (1853).

**New York:**

Tillinghast vs. Merrill, 151 N. Y. 135 (1896), which finally establishes the more stringent rule as the settled law of New York. Previously to this case, there seemed to be some conflict in the New York decisions.

Supervisors vs. Dorr, 25 Wend. 440 (1841).

People vs. Falkner, 107 N. Y. 477 (1887), seeming to lead toward the more liberal rule, while Muzzy vs. Shattuck, 1 Denio 233 (1845), seem contra.

In People vs. Falkner, the same arguments in favor of the more liberal rule, which were presented to this court are found in the opinion of Judge Earl, but the New York courts, as above stated, have finally held these arguments lacking in persuasiveness.

**Pennsylvania:**

Commonwealth vs. Comley, 3 Pa. St. 372 (1846).

Nason vs. Poor Directors, 126 Pa. St. 469 (1889).

Commissioners vs. Bailey, 129 Pa. St. 480 (1889).

**New Jersey:**

McSachron vs. Township of New Providence, 35 N. J. Law, 6 Vroom, 529 (1871).

In this case, the court (Woodhull, J.), say, speaking of United States vs. Prescott, 3 How. 578: "That case was decided in 1815, and has been ever since approved and followed with singular unanimity by all the courts, not only of the United States and every State, so far as I know, in which the official responsibility of a depository of public money has since been drawn in question.

**Ohio:**

State vs. Harper, 6 Ohio State, 607 (1856).

**Illinois:**

Ramsay vs. People, 97 Ill. App. 283 (1901).

Thompson vs. Board Trustees, 30 Ill. 99 (1863).

Swift vs. Trustees of School, 189 Ill. 584.

**Michigan:**
Perley vs. Muskegon Co., 32 Mich. 132 (1875).

**Indiana:**
Halbert vs. State, 22 Ind. 125 (1864).
Morbeck vs. State, 28 Ind. 86 (1867).
Inglis vs. State, 61 Ind. 212 (1878).

**West Virginia:**
Town of Cameron vs. Hicks, 64 S. E. Rep. 832 (1909).

**Missouri:**
Missouri vs. Gatzweiler, 49 Mo. 17 (1871).
State vs. Powell, 67 Mo. 397 (1878).
State vs. Moore, 74 Mo. 413 (1881).

**Wisconsin:**
Omro vs. Kaine, 39 Wis. 468 (1876).
State vs. McTetridge, 84 Wis. 473 (1893).

**Kansas:**
Rose vs. Douglass Township, 52 Kan. 451 (1893).

**Minnesota:**
County of Hennepin vs. Jones, 18 Minn. 199 (1872).
County of Redwood vs. Tower, 28 Minn. 45 (1881).
Board of Education vs. Jewell, 44 Minn. 427 (1890).
Board vs. Elmund, 94 Minn. 196 (1905), is clearly distinguishable in its facts. The foregoing cases are not mentioned in the opinion, and there is absolutely nothing to indicate an intention to overrule them.

**Nebraska:**
Bush vs. Johnson Co., 48 Neb. 1 (1896).
Thomssen vs. Hall Co., 63 Neb. 777 (1902)

**North Carolina:**
State vs. Clarke, 73 N. C. 255 (1875).
Harris vs. Lathene, 75 N. C. 505 (1876).
State vs. Blair, 76 N. C. 78 (1877).

**Georgia:**
Lamb vs. Dart, 108 Ga. 602 (1899).

**Mississippi:**
Griffin vs. Levee, Commrs., 71 Miss. 767 (1894).

**Texas:**
Boggs vs. The State, 46 Texas, 10 (1876).
Wilson vs. Wichita Co., 67 Texas, 647 (1887).

**Iowa:**
District Township vs. Martin, 37 Ia. 553 (1873), distinguishing—
Ross vs. Hatch, 5 Ia. 149 (1857).
District Township vs. Smith, 39 Ia. 9 (1874).
Lowry vs. Polk Co., 51 Ia. 50 (1879).
Hunt vs. Hopsley, 120 Ia. 695 (1903).

**Colorado:**
Carthy vs. People, 24 Colo. 155 (1897), distinguishing Wilson vs. People, 19 Colo. 199 (1893).

**Nevada:**
State vs. Nevin, 19 Nev. 162 (1885).

**New Mexico:**
United States vs. Watts, 1 N. Mex. 553 (1873).
Maloy vs. County Commrs., 10 N. Mex. 638 (1900).

**Washington:**
Fairchild vs. Hedges, 14 Wash. 117 (1896)

**Oklahoma:**
Van Trees vs. Territory, 7 Ok. 352 (1898)

**Arkansas:**
State vs. Wood, 51 Ark. 205 (1888).

### STATES HOLDING CONTRARY DOCTRINE.

**Maine:**
Cumberland vs. Pennell, 69 Me. 357 (1879)
Three Judges out of seven dissented.

**South Carolina:**
York Co. vs. Watson, 15 S. C. 1 (1880).

**Alabama:**
State vs. Houston, 78 Ala. 576 (1885).
State vs. Houston, 83 Ala. 361 (1887).
But see Alston vs. State, 92 Ala. 124 (1890).
Montgomery vs. Cochran, 121 Fed. Rep. 17 (1903).

**Tennessee:**
Governor vs. McEwen, 5 Hump, 241 (1844).
Peck vs. Jones, 3 Head. 75 (1859).
State vs. Coupland, 96 Tenn. 296 (1896).

**Kentucky:**
Sweeney vs. Commonwealth, 118 Ky. 912 (1894).

**California:**
Healdsbury vs. Mulligan, 113 Cal. 205 (1896).
County of Sonomo vs. Stephen, 125 Cal. 37 (1899).

**Wyoming:**
State vs. Gramm, 7 Wyo. 339 (1898), one Justice out of threee dissenting.
Robert vs. County Com'mrs. of Laramie Co., 8 Wyo. 177 (1898).

**Montana:**
City of Livingston vs. Woods, 20 Mont. 91 (1897), one Justice out of three dissenting in part, overruling Commrs. vs. Lineberger, 3 Mont. 231 (1878).

**England:**
Whitfield vs. Lord Despencer, 2 Cowper, 754 (1778).
Lane vs. Cotton, 1 Lord Raymond, 646 (1701).
Walker vs. Guarantee Asso., 18 Q. B. 277 (1886).

These are the cases which are sometimes cited as opposed to the doctrine of United States vs. Prescott, but the two earlier cases were action against the Postmaster General for the loss of a packet and a bank note stolen out of a letter, and the last case was not an action on the official bond of a receiver of public moneys.

### TEXT BOOKS.

All the Text Books, and law writers, which this Court has consulted, concede that the more stringent view is supported by the weight of authority. Mechem on Public Officers (Edition of 1890), Secs. 297-301, and Gustav Stein, in his Article in 1 Michigan Law Review, 1903, 557, advocate the more liberal doctrine.

Throop on Public Officers, 1892, Sections 221-229, is noncommittal.

Murfree on Official Bonds, 1885, Section 64, upholds the majority doctrine.

Messrs. Beers and Kearful in Am. & Eng. Encyclopedia of Law, Vol. IV, p. 680, text and note 7, p. 681. Text and note 1, 1897, cite the authorities and use language in the text which would seem to imply that the majority doctrine is settled law, although there are decisions which appear to support a contrary doctrine."

It will be noticed that these text books were published in the interval between the Thomas and the Smythe case, and that the article in the Michigan Law Review is practically a criticism of the Smythe case.

Of the Text Books published since 1902, Frank J. Goodnow, in Cyc., Vol. 29, p. 1437 (1908), confines himself to stating the two views and citing the authorities.

Brandt on Suretyship, Vol. II, Section 676 (1908), gives the majority rule in the text, and it is only in the note that, after citing many cases in support of the text, a few cases are given under "Contra" or "See also."

Childs on Suretyship, 1907 Ed., pp. 374-375, lays down the rule of strict liability as law without qualification, giving many cases in support of the text, and not one contra, nor is there any expression to indicate any doubt in the author's mind about the thorough acceptance of the rule.

**Note 17**—Cameron vs. Hicks, 64 S. E. Rep. 832, decided by the Supreme Court of W. Va., April 20, 1909.

**Note 18—Disposition in Detail of the Pleas Filed by J. Sewell Thomas.**

1. No issue of law.

2. No issue of law.

3. Demurrer sustained. This plea presents one of the defences discussed in the opinion.

4. Demurrer to the replication overruled. This plea and the replication thereto raise one of the main questions discussed in the opinion.

5. Demurrer sustained. This plea presents one of the defenses discussed in the opinion. According to the view of this court it makes no difference how or from whom money was received by Thomas provided it was money belonging to the Mayor and City Council, and came into the hands of Thomas while holding the office of City Register.

6. Demurrer sustained. This plea raises the same question as plea five.

**Note 19—Disposition in Detail of the Pleas Filed by the U. S. Fidelity & Guaranty Co.**

1. No issue of law.

2. No issue of law.

3. Demurrer sustained. The point was decided in the former opinion.

4. Demurrer sustained. This conclusion follows from the overruling of demurrer to narr.

5. Demurrer sustained. Same reason, the ordinances being treated by agreement as part of the narr.

6. Demurrer to the replication overruled. This plea and replication are the same as the 4th plea filed by Thomas and the replication thereto.

7. Demurrer sustained. The ordinances and the bond being before the court, and the court being satisfied that the conditions in the bond do not differ in substance from what is provided for by the ordinances the allegation that "the said alleged bond was extorted from the defendant, J. Sewell Thomas, under color of office," is not well pleaded.

8. Demurrer sustained. It is either argumentative plea of non est factum, which has already been pleaded, or it is faulty in not denying the existence of the bond sued on as a voluntary bond.

9. Demurrer sustained. Like the 4th plea, inasmuch as by agreement the ordinances were made part of the declaration this is really a demurrer to the narr.

10. Demurrer sustained. This court can see no difference in legal effect between this and the 6th plea.

12. This plea presents no issue of law.

13. This plea presents no issue of law.

14. This plea presents no issue of law.

16. Demurrer sustained. The plea is bad as requiring the jury to find in what respects the law requires an accounting and payment. It also requires the jury to find whether or not money came into Thomas' hands "in accordance with law."

17. Demurrer sustained. This is substantially the same as the third plea filed by Thomas.

18. Demurrer sustained. This defence is discussed in the opinion.

19. Demurrer sustained. This defence is discussed in the opinion.

20. Demurrer sustained. This defence is discussed in the opinion.

22. Demurrer sustained. The proposition that it is impossible for the City Register to "account for" the city's money which may come into his hands until after the termination of his official term, was not argued at any of the hearings of this rather protracted case. The proposition seems startling, and does not commend itself to this court.